**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

TIFFIANY J. JOHNSON-MCGOYNE,    )
                                )
          Plaintiff,            )
                                )
v.                              )   Case No. CIV-21-067-RAW-JAR
                                )
COMMISSIONER OF THE SOCIAL      )
SECURITY ADMINISTRATION,        )
                                )
          Defendant.            )

**REPORT AND RECOMMENDATION**

Plaintiff Tiffiany J. Johnson-McGoyne (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 45 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a property manager, building property maintenance worker, and dental assistant. Claimant alleges an inability to

3

work beginning August 1, 2017 due to limitations resulting from fibromyalgia, polycystic ovarian syndrome, post-traumatic stress disorder ("PTSD"), chronic fatigue, anxiety, depression, and bipolar disorder.

## Procedural History

On June 25, 2019, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act and on November 28, 2019, Claimant filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act.  Claimant's applications were denied initially and upon reconsideration.  On August 12, 2020, Administrative Law Judge ("ALJ") James Stewart conducted an administrative hearing by telephone due to the COVID-19 pandemic.  Claimant and her representative agreed to the matter being conducted by telephone.  On September 1, 2020, the ALJ issued an unfavorable decision.  On December 23, 2020, the Appeals Council denied review.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential

4

evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform light work and jobs were available in the economy that she could perform.

## Errors Alleged for Review

Claimant asserts the ALJ erred in (1) his analysis of the medical evidence and opinions; and (2) his findings at step five of the sequential evaluation process.

## The ALJ's Decision

In his decision, the ALJ determined Claimant suffered from the severe impairments of osteoarthritis, bilateral hands; polyneuropathy; obesity; bipolar/depressive disorder; adjustment disorder with depressed mood; anxiety disorder; trauma- and stressor-related disorder. (Tr. 15). The ALJ found Claimant retained the RFC to perform light work except she could not climb ladders, ropes, or scaffolds, could occasionally stoop, kneel, crouch, balance, crawl and climb ramps or stairs. Claimant could handle and finger frequently bilaterally. The ALJ determined that, due to mental impairments, Claimant was capable of doing only unskilled work consisting of simple and routine tasks with routine supervision that require only that she be able to understand, remember, and carry out simple instructions. Claimant

5

could maintain concentration and persist for two-hour periods during the workday with normally scheduled work breaks between periods. Claimant could relate to supervisors and co-workers on a superficial and work-related basis and could adapt to a work situation. Claimant should not work at jobs where changes in work routine occur on a regular basis, or where changes in routine are regularly made under circumstances where there is usually little or no notice or opportunity to adjust. Claimant could have occasional contact with co-workers but no contact with the general public (meaning interaction with the general public is not part of the job duties, and any contact would in most cases be incidental and superficial.). (Tr. 19-20). With this RFC and after consulting with a vocational expert, the ALJ concluded that Claimant could not perform her past relevant work as a property manager, building property maintenance worker, or dental assistant. (Tr. 26). The ALJ found that Claimant retained the RFC to perform the representative jobs of electrical accessories assembler and inspector/packager. (Tr. 27). Based upon these findings, the ALJ concluded that Claimant had not been under a disability from August 1, 2017 through the date of the ALJ's decision. (Tr. 28).

**Evaluation of the Medical Evidence and Opinion Evidence**

Claimant contends the ALJ erred in evaluating the medical opinion evidence in (1) "summarily dismiss[ing]" the opinions of two nurse practitioners, Ashley Roberts and Benjamin Bradley; and (2) failing to employ a consultative medical source since the agency physicians found insufficient evidence prior to December 31, 2017 to make a determination. On July 23, 2019, Ashley Roberts, APRN, NP-C authored a "to whom it may concern" letter regarding Claimant's condition. She wrote that Claimant "has been under our care and unable to work due to the conditions" of fibromyalgia, anxiety/depression, PTSS (post-traumatic stress syndrome), chronic sever(e) migraines, concentration issues, bipolar disorder, and acute arthritis. Nurse Roberts also listed the medications which had been prescribed for Claimant to address these conditions which include Wellbutrin, Amitriptyline, Buspirone, Trokendi, and Tizandine. (Tr. 332).

Under the relatively new regulations pertaining to claims such as Claimant's which were filed after March 31, 2017, a "medical opinion" is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in

7

some specifically designated abilities. 20 C.F.R. § 404.1513(a)(2). "Acceptable medical sources" include "Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice." 20 C.F.R. § 404.1502(a)(7). Nurse Roberts would appear to meet this definition for a medical source to be considered. The information she relays in the letter of July 23, 2019, however, can by no stretch be considered a "medical opinion." Other than an unsupported conclusion that Claimant is "unable to work", no further discussion or explanation of the limitations imposed by the conditions that she sets out is contained in the curiously brief letter. Evidence that is not considered "medical opinion" from an "acceptable medical source" is considered "other evidence." "Other evidence" is defined in the regulations as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3).

The ALJ discussed the content of Nurse Roberts' letter. (Tr.

8

23-24). He concluded, however, that Nurse Roberts' statements constituted "other evidence" and found that it "is inherently neither valuable no[r] persuasive." (Tr. 24). The ALJ was entirely within his right to make this finding on this "other evidence" without further consideration. 20 C.F.R. § 404.1520b(c)(3). His rejection of Nurse Roberts' letter was appropriate.

Benjamin Bradley, CNP completed a Residual Functional Capacity to Do Work Related Activities form on Claimant dated August 3, 2020. He found Claimant could sit and stand up to one hour at a time and for three hours in an eight hour workday, walk for 10-30 minutes at a time and for two hours in an eight hour workday, frequently lift up to 20 pounds, and carry frequently up to ten pounds and continuously up to five pounds. (Tr. 585). Nurse Bradley determined Claimant had no limitations in pushing and pulling with his legs or use of his hands in repetitive movements. He also concluded Claimant could squat, crawl, climb, and reach occasionally but bend, handle, and finger frequently. She was found to be moderately limited in unprotected heights, exposure to dust, fumes and gases, and in exposure to vibrations. He stated that Claimant could not be able to perform work on a

9

sustained and continuing basis for eight hours per day, five days per week due to "periodic pain flare ups from fibromyalgia." (Tr. 586).

Nurse Bradley also stated Claimant's conditions would affect her pace of production for jobs requiring such and that she would have a "slight" impairment of her concentration by pain or other impairments. The impairments identified were "anxiety/hypersomnia." Nurse Bradley set out that Claimant would encounter distraction from job tasks or the failure to complete such tasks in a timely manner due to "frequent flare up of pain and day time sleepiness." Her conditions would cause her to miss work more than three times per month. Her medications would not interfere with her ability to concentrate or reason. (Tr. 587). Nurse Bradley provides a narrative explanation of Claimant's limiting conditions by stating "pain associated with fibromyalgia, obesity with BMI 37.4%, edema of bilateral hands and hypersomnia." (Tr. 588).

The ALJ discussed Nurse Bradley's statement in considerable detail in his decision. (Tr. 24-26). He concluded, however, that the opinion was "unpersuasive" and "not consistent with what the medical evidence of his treatment showed." (Tr. 25).

10

Specifically, while Claimant reported fibromyalgia flare ups, the objective medical record did not support limitations in Claimant's physical and mental abilities – normal findings in range of motion, joint pain and swelling, no fatigue, edema or shortness of breath. (Tr. 574-81). More importantly, the ALJ correctly found that the medical record did not document fibromyalgia tender point/trigger point testing to support functional limitations brought about by fibromyalgia. (Tr. 25).

For claims filed after March 27, 2017, the regulations include a new section entitled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. § 404.1520c. The regulation provides that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a).

The regulation further provides that the Social Security Administration ("SSA") will consider each medical source's opinions using five factors, supportability, consistency, relationship of source to claimant, specialization, and other

11

factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a)(c)(1-5). It provides that the most important factors in evaluating persuasiveness are supportability and consistency. Id.

The regulation explains that the decision will articulate how persuasive the SSA finds all medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c(b). The articulation requirement applies for each source, but not for each opinion of that source separately. 20 C.F.R. § 404.1520c(b)(1).

It requires that the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b)(2). The regulation explains that when the decisionmaker finds two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," the decision will articulate the other most persuasive

factors from paragraphs (c)(3) through (c)(5). 20 C.F.R. § 404.1520c(b)(3). Finally, the regulation explains that the SSA is not required to articulate how it considered evidence from non-medical sources. 20 C.F.R. § 404.1520c(d).

The factor of supportability "examines how closely connected a medical opinion is to the evidence and the medical source's explanations: 'The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be.'" Zhu v. Comm'r, SSA, 2021 WL 2794533, at *5 (10th Cir. July 6, 2021)(internal brackets and ellipsis omitted) (quoting 20 C.F.R. § 404.1520c(c)(1)). Consistency, by contrast, "compares a medical opinion to the evidence: 'The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be.'" Id. (internal ellipsis omitted)(quoting 20 C.F.R. § 404.1520c(c)(2)).

The ALJ's findings on the consistency of the Nurse Bradley's opinion with the medical record are supported by the substantial evidence. The record adversely affects the persuasiveness of Nurse Bradley's conclusions. This Court finds no error in the

rejection of Nurse Bradley's opinion evidence.

Claimant also contends that the ALJ should have obtained further consultative evidence because of the findings of the reviewing agency physicians. These physicians only reviewed the record in the context of Claimant's application for disability insurance benefits since that was all that was filed at the time of their review. Claimant later filed an application for supplemental security income. (Tr. 26; 76-81). The ALJ concluded that the medical record did not support a finding for limitations caused by fibromyalgia, depression, or osteoarthritis. (Tr. 26).

Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining

14

pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361.

The duty to develop the record extends to ordering consultative examinations and testing where required. Consultative examinations are used to "secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. § 416.919a(2). Normally, a consultative examination is required if

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
>
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence mus be resolved, and we are unable to do so by recontacting your medical source;

15

or

    (5) There is an indication of a change in your condition that is likely to affect your ability to work.

20 C.F.R. § 416.909a(2)(b).

None of these bases for ordering a consultative examination exists in the record. The ALJ had a sufficient record to determine insufficient evidence existed of the limitations claimed by Claimant. The ALJ did not violate his duty to develop the record by not ordering further medical evaluations.

### Step Five Evaluation

Claimant next contends that the ALJ erred in finding that she could perform the representative jobs of electrical accessories assembler and inspector/packer, both of which require a GED reasoning level of two. (Tr. 27). Reasoning level two requires a claimant to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Dictionary of Occupational Titles*, #729.687-010 (assembler), #559.687-074 (inspector/packer). Claimant asserts that the ALJ erred in failing to resolve the conflict between the vocational expert's testimony that she could perform the two identified representative jobs and the DOT.

16

Claimant was found to be able to understand, remember, and carry out simple instructions in the RFC. (Tr. 19). This Court has found that a level two reasoning level is consistent with an RFC limitation to simple and routine work tasks, following the Tenth Circuit case of Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005). The representative jobs identified by the vocational expert are consistent with the DOT and the ALJ's reliance upon that testimony was not erroneous.

Claimant also contends that an additional job identified by the vocational expert – agricultural produce sorter - does not exist in sufficient numbers to be considered. While this Court is not required to address this argument given that the other two jobs identified by the vocational expert satisfy step five, 45,800 agricultural produce sorter jobs exist in national economy. This represents a significant number of jobs in the economy such that it may be considered. *See e.g.*, Rogers v. Astrue, 2009 WL 368386, *4 (10th Cir. Feb. 17, 2009)(testimony by vocational expert of 11,000 hand packager jobs in the national economy could be relied upon by the ALJ as substantial evidence to support a finding of non-disability).

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file any objections with the Clerk of the court any objections. Failure to object to the Report and Recommendation within fourteen (14) days will preclude review of this decision by the District Court.

DATED this  6th  day of September, 2022.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE